No. 24-1214

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT
_____

RICKEY C. MENEWEATHER,

      Plaintiff-Appellant,

v.

STEPHEN RITZ and MARLENE HENZE,

      Defendants-Appellees.

_____

Appeal from the United States District Court
For the Northern District of Illinois
Case No. 19-cv-6643
The Honorable Judge Matthew F. Kennelly

_____

## BRIEF FOR DEFENDANTS-APPELLEES,
## STEPHEN RITZ, M.D. and MARLENE HENZE, M.D.

_____

CONNOLLY KRAUSE, LLC
Robert S. Tengesdal
Jeffrey J. Escher
500 W. Madison Street, Suite 3900
Chicago, IL 60661
Attorneys for Defendants-Appellees,
Stephen Ritz, M.D. and Marlene
Henze, M.D.

## RULE 26.1 DISCLOSURE STATEMENT

Defendants Dr. Marlene Henze and Dr. Stephen Ritz are individuals and therefore the disclosure requirement of Rule 26.1 relevant to corporations do not apply. Dr. Marlene Henze and Dr. Stephen Ritz are represented both in this circuit and in the district court by the law firm Connolly Krause, LLC. Attorney Robert Tengesdal and Jeffrey Escher represent Dr. Marlene Henze and Dr. Stephen Ritz in both this circuit and in the district court.

# TABLE OF CONTENTS

**RULE 26.1 DISCLOSURE STATEMENT** ....................................................i

**TABLE OF AUTHORITIES**....................................................................iv

**JURISDICTIONAL STATEMENT** .........................................................1

**STATEMENT OF THE ISSUES**..............................................................2

**STATEMENT OF THE CASE** .................................................................2

    A. Statement of Facts ..............................................................................2

    B. Procedural History...............................................................................5

**SUMMARY OF THE ARGUMENT**.........................................................5

**ARGUMENT** ...........................................................................................6

    A.  The District Court Correctly Found That Mr. Meneweather Could Not Prove Causation By a Preponderance of the Evidence ...........................................................7

        1.    Mr. Meneweather's expert does not provide sufficient evidence for a reasonably jury to conclude that Dr. Henze or Dr. Ritz caused him to suffer injury.................7

            i.  Dr. Pollack does not offer the jury any assistance in deciding the element of causation as required by Federal Rules of Civil Procedure 702 and 703 .........8

        2.    Determining causation as a matter of law is appropriate in cases like this one ........9

            i.  *Roe v. Elyea* does not support Mr. Meneweather's argument............................. 10

            ii.  *Miranda v. County of Lake* does not support Mr. Meneweather's argument..........12

            iii.  *McDonald v. Hardy* does not support Mr. Meneweather's argument....................14

            iv.  *Jackson v. Sheriff of Winnebago County* is equally inapposite to the facts here..........14

        3.    Mr. Meneweather attempts to change the burden of proof to establish the causation element of a deliberate indifference claim.............................................16

        4.    Mr. Meneweather did not argue to the district court that any delay caused him to experience unnecessary pain and suffering.......................................................18

B. The District Court Erred in Holding That a Reasonable Jury Could Find Dr. Henze And Dr. Ritz were Deliberately Indifferent...........................................................19

1. Mr. Meneweather's failure to respond to Dr. Henze's and Dr. Ritz's Local Rule 56.1 Statement of Material Facts warrants affirming the district court's ruling..........19

2. No reasonable jury could find that Dr. Henze substantially departed from acceptable standards of care.........................................................................................20

3. The record was insufficient to find that Dr. Ritz provided treatment to Mr. Meneweather in order to be found to be deliberately indifferent...........................22

**CONCLUSION**...............................................................................................................25

**CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)**........................................26

**PROOF OF SERVICE**.......................................................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Betco Corp. v. Peacock,*
876 F.3d 306 (7th Cir. 2017) ........................................................................................18

*Curtis v. Costco Wholesale Corp.,*
807 F.3d 215 (7th Cir. 2015) ........................................................................................19

*Dean v. Wexford Health Sources, Inc.,*
18 F.4th 214 (7th Cir. 2021) ........................................................................................20

*Gabb v. Wexford Health Sources, Inc.,*
945 F.3d 1027 (7th Cir. 2019) ........................................................................................9

*Gicla v. United States,*
572 F.3d 407 (7th Cir. 2009) ........................................................................................17

*Goodloe v. Sood,*
947 F.3d 1026 (7th Cir. 2020) ........................................................................................23

*Hunter v. Mueske,*
73 F.4th 561 (7th Cir. 2023) ........................................................................................10

*Jackson v. Sheriff of Winnebago County,*
74 F.4th 496 (7th Cir. 2023) ........................................................................................14, 15

*Manpower Inc. v. Insurance Company of Pennsylvania,*
732 F.3d 796 (7th Cir. 2013) ........................................................................................9

*McDonald v. Hardy,*
821 F.3d 882 (7th Cir. 2016) ........................................................................................13, 14

*Miranda v. County of Lake,*
900 F.3d 335 (7th Cir. 2018) ........................................................................................12, 13

*Norfleet v. Webster,*
439 F.3d 392 (7th Cir. 2006) ........................................................................................20

*Norwood v. Ghosh,*
723 Fed. Appx. 357 (7th Cir. 2018) ........................................................................................10

*Ortiz v. City of Chicago,*
656 F.3d 523 (7th Cir. 2011) ........................................................................................17

*Petties v. Carter,*

836 F.3d 722 (7th Cir. 2016) ............................................................................19

*Pulera v. Sarzant.,*
966 F.3d 540 (7th Cir. 2020) ............................................................................10

*Roe v. Elyea,*
631 F.3d 843 (7th Cir. 2011) ................................................................10, 11, 12

*Sims v. Mulcahy,*
902 F.2d 524 (7th Cir. 1990) ............................................................................17

*Smith v. Ford Motor, Co.,*
215 F.3d 713 (7th Cir. 2000) ..............................................................................9

*Stewart v. Wexford Health Sources, Inc.,*
14 F.4th 757 (7th Cir. 2021) ................................................................20, 22, 24

*Timm v. Goodyear Dunlap Tires North America, Ltd.,*
932 F.3d 986 (7th Cir. 2019) ..............................................................................9

*Williams v. Liefer,*
491 F.3d 710 (7th Cir. 2007) ..............................................................................8

*Woodward v. Correctional Medical Services of Illinois, Inc.,*
368 F.3d 917 (7th Cir. 2004) ............................................................................11

## Federal Rules                                             Page(s)

Fed. R. App. P. 28(a)(6) ......................................................................................2

Fed. R. Civ. P. 26(a)(2)(B)................................................................................17

Fed. R. Evid. 702 ............................................................................................8, 9

Fed. R. Evid. 702(b), (d) ....................................................................................8

Fed. R. Evid. 703 ................................................................................................8

## Federal Statutes                                           Page(s)

28 U.S.C. § 1331..................................................................................................1

42 U.S.C. § 1983..................................................................................................1

**Seventh Circuit Pattern Civil Jury Instructions**                                   **Page(s)**

1.27 (2017 Ed.) .................................................................................................................. 13, 16

7.17 (2017 Ed.) ........................................................................................................................7

## JURISDICTIONAL STATEMENT

Jurisdiction in the district court was appropriate pursuant to 28 U.S.C. § 1331 as Plaintiff's claims were brought under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment to the United States Constitution. The district court granted summary judgment and entered final judgment in favor of Defendants on January 5, 2024. (AR 091). Plaintiff filed his notice of appeal on February 1, 2024. (AR 071, 091). Plaintiff's jurisdictional statement was correct, but incomplete as it did not include the date of entry of final judgment nor the date the notice of appeal was filed as required by Circuit Rule 28(a)(2).

## STATEMENT OF THE ISSUES

1.     Whether the district court appropriately granted summary judgment in favor of Dr. Marlene Henze and Dr. Stephen Ritz in finding that no question of fact remained for the jury to decide as to whether these Defendants caused Plaintiff to suffer injury or harm.

2.     Whether Dr. Henze and/or Dr. Ritz exercised their independent medical judgment when making decisions relative to their involvement in Plaintiff's medical care for his right ear.

3.     Would any minimally competent primary care physician have made the same diagnosis and provided the same treatment based on Plaintiff's clinical presentation and complaints.

## STATEMENT OF THE CASE

Defendants provide this Court with their own statement of the case as Plaintiff's statement of the case is not a concise statement of facts relevant to the issues presented as required by Federal Rule of Appellate Procedure 28(a)(6), but instead provides facts mixed with argument.

A.     Statement of Facts

Plaintiff, Rickey Meneweather ("Mr. Meneweather") was an inmate at Sheridan Correctional Center ("Sheridan") at the time the events occurred that are alleged in his complaint. (AR 051). Mr. Meneweather was released from Sheridan on February 14, 2020. (AR 105). Defendant, Dr. Marlene Henze ("Dr. Henze") was the medical director at Sheridan from December 26, 2017 to October 8, 2018. (AR 051). During her time at Sheridan, Dr. Henze would provide medical care to inmates. (AR 051). Defendant, Dr. Stephen Ritz ("Dr. Ritz") was the Corporate Utilization Director for Wexford Health Sources from 2014 to approximately 2020. (AR 051).

On August 20, 2018, Mr. Meneweather reported to a nurse that he woke up with blood coming out of his ear. (AR 051). Mr. Meneweather alerted a correctional officer ("CO") that his ear was bleeding. (AR 111). Mr. Meneweather was given a pass to go to the healthcare unit and was seen by a nurse who flushed his ear and told Mr. Meneweather that he needed to return to see the doctor and

so he was given a pass to return to see Dr. Henze. (AR 111, 114). That same day, Mr. Meneweather was examined by Dr. Henze. (AR 472). At that visit Mr. Meneweather reported to Dr. Henze of decreased hearing in his right ear but did not report any pain. (AR 472). Dr. Henze noted that Mr. Meneweather had "adherent cerumen" (earwax) and a "scant" amount of red blood, which she related to a "traumatic removal" of earwax. (AR 472). Dr. Henze also noted the presence of a "white effusion" in Mr. Meneweather's right ear canal. (AR 472). Dr. Henze prescribed Maxitrol to treat Mr. Meneweather's right ear. (AR 472). Maxitrol is an ear drop that combines steroid and antibiotic. (AR 052). Dr. Henze prescribed Maxitrol because Mr. Meneweather was at a high risk for developing an infection given the open wound from the traumatic earwax removal. (AR 052). Dr. Henze also prescribed the oral antibiotic, Bactrim, to treat the effusion. (AR 052).

Mr. Meneweather next saw Dr. Henze on September 27, 2018. (AR 475). Mr. Meneweather was originally scheduled for a follow-up with Dr. Henze for September 7, 2018, but due to scheduling errors and time constraints in the doctors' schedules, Mr. Meneweather's appointments were rescheduled to September 27th. (AR 474). On September 27, 2018, Dr. Henze noted that Mr. Meneweather's right ear had improved, and the infection had resolved. (AR 209-210). Dr. Henze noted that the tympanic membrane in Mr. Meneweather's right ear was retracted and immobile. (AR 475). Based on Dr. Henze's assessment, Mr. Meneweather was still experiencing decreased hearing at that visit due to his allergy symptoms and because a retracted tympanic membrane is usually caused by eustachian tube dysfunction which causes the tympanic membrane to pull around the small bones that vibrate for hearing. (AR 053). If the tympanic membrane does not vibrate, then the small bones won't vibrate and hearing is impacted. (AR 053). As a result of her assessment, Dr. Henze again prescribed Maxitol drops. (AR 475). Dr. Henze also prescribed Nasacort to treat the inflammation and the eustachian tube dysfunction and Debrox drops to soften any remaining ear wax and make it easier to remove. (AR 054).

On November 9, 2018, Mr. Meneweather was seen by Dr. Christian Okezie. (AR 296). On that date, Dr. Okezie examined Mr. Meneweather and documented that Mr. Meneweather complained of hearing loss with ringing noise for the past two months. (AR 476). Dr. Okezie referred Mr. Meneweather to University of Illinois Chicago ("UIC") for an ENT visit after examining Mr. Meneweather's right ear and noting retracted, hyperemic, no light reflex, right tympanic membrane treated twice for otitis media. (AR 055, AR 476). Dr. Ritz reviewed Dr. Okezie's recommendation for referral to UIC and recommended an alternative treatment plan on November 21, 2018. (AR 477). The alternative treatment plan included an audiology test on site, which could be done after completing a course of steroids and Claritin. (AR 056, AR 477-78). On January 11, 2019, after Mr. Meneweather had the on-site audiology test that showed hearing loss in his right ear, Dr. Ritz approved a referral to an audiologist. (AR 305-06).

Mr. Meneweather was subsequently seen by Matthew Walk at Ortiz Eye and Hearing Associates in February 2019. (AR 057). On February 11, 2019, Mr. Walk performed a test that revealed loss of hearing in Mr. Meneweather's right ear. (AR 058, AR 502). After that test, Dr. Ritz approved Dr. Okezie's medical services request for Mr. Meneweather to see an ENT for a hearing aid consultation. (AR 306-07). On April 18, 2019, Mr. Meneweather was seen by the ENT specialist who recommended that Mr. Meneweather have an MRI. (AR 505). The request for an MRI was approved and occurred on June 4, 2019. (AR 505-06). Mr. Meneweather's MRI was normal, and the ENT specialist recommended proceeding with the hearing aids as no future treatment was needed. (AR 507). On June 18, 2019, Mr. Meneweather returned to Ortiz Eye and Hearing Associates for an impression of his right ear for the hearing aid. (AR 508). On July 5, 2019, Mr. Meneweather received his hearing aid. (AR 512).

B.     Procedural History

Mr. Meneweather filed his initial complaint on October 04, 2019. (AR 076). Mr. Meneweather filed the current Second Amended Complaint on August 5, 2020. (AR 079). In July 2023, both Dr. Henze and Dr. Ritz filed motions for summary judgment. (AR 089-90). By August 23, 2023, Dr. Henze's and Dr. Ritz's motions for summary judgment were fully briefed. (AR 091). On January 5, 2024, the district court Honorable Matthew F. Kennelly ("Judge Kennelly") entered his memorandum opinion and order granting summary judgment to Dr. Henze and Dr. Ritz. (AR 091, AR 001-12). Judge Kennelly made two findings relevant to this appeal: (1) a reasonable jury could find that Dr. Henze's and Dr. Ritz's conduct was such a significant departure from the standard of care that their conduct amounted to deliberate indifference, and (2) "there is no evidence from which a reasonable jury could find that any different treatment by Dr. Henze or by Dr. Ritz would have prevented or forestalled [Mr. Meneweather's] hearing loss." (AR 008-09).

**SUMMARY OF THE ARGUMENT**

The district court appropriately held that no reasonable jury could find that Dr. Henze and/or Dr. Ritz caused Mr. Meneweather to suffer any harm or injury. The undisputed facts of this case allowed the district court to find as a matter of law that Mr. Meneweather could not prove causation by a preponderance of the evidence at trial. Mr. Meneweather's expert's opinions would not have assisted the jury in any way and would have resulted in the jury speculating whether Mr. Meneweather's eventual hearing loss would have been stalled or prevented had he been given a high dose of steroids as Mr. Meneweather's expert opines was the standard of care. Mr. Meneweather presented no other verifying medical evidence that could have assisted the jury in deciding whether Dr. Henze or Dr. Ritz were responsible for his injuries. Therefore, the district court's order granting summary judgment in favor of Dr. Henze and Dr. Ritz should be affirmed.

Despite the district court finding in his favor, Mr. Meneweather spends an unnecessary amount of space in his brief arguing that the district court appropriately found a question of fact as to Dr. Henze's and Dr. Ritz's alleged deliberate indifference. However, given this Court's *de novo* review, this Court should find that the district court was incorrect on the subjective component of Mr. Meneweather's deliberate indifference claims. Neither Dr. Henze's nor Dr. Ritz's conduct rose to the level of deliberate indifference and no reasonable jury could find that it did given the evidence Mr. Meneweather would present at trial. Both doctors had limited involvement with Mr. Meneweather's right ear complaints. Dr. Ritz never examined or diagnosed Mr. Meneweather at all. In considering the entire record, it should be clear that the district court was incorrect when it held that there was sufficient evidence to potentially support a finding of deliberate indifference. Therefore, even if this Court were to find that the district court was incorrect in granting summary judgment based on causation – this Court should nevertheless affirm the district court's order based on the lack of evidence to support deliberate indifference.

## ARGUMENT

This Court should affirm Judge Kennelly's summary judgment ruling as he correctly found that there was insufficient evidence from which a jury could find that Dr. Henze or Dr. Ritz caused Mr. Meneweather to suffer injury or harm. (AR 011). Mr. Meneweather could not prove causation by a preponderance of the evidence, which would require a showing "that it is reasonably likely that [Mr. Meneweather's] hearing loss would have been prevented or avoided if there had been proper treatment." (AR 010). Instead of building a strong case for why the district court got this issue wrong, Mr. Meneweather spends a disproportionate amount of space in his appellate brief arguing that the district court correctly decided that there was enough evidence to create a question of fact for the jury to decide that Dr. Henze and/or Dr. Ritz were deliberately indifferent. This is a red herring because even if assuming *arguendo* that the district court was correct in finding that Mr. Meneweather presented

sufficient evidence to support the deliberate indifference element – establishing causation is a separate and distinct requirement. Even when this Court reviews the record anew – it should affirm the district court's order granting summary judgment in favor of Dr. Henze and Dr. Ritz.

**A.  The District Court Correctly Found That Mr. Meneweather Could Not Prove Causation by a Preponderance of the Evidence.**

Mr. Meneweather ignores the required preponderance of the evidence standard in his appeal to this Court pointing only to very limited testimony from his expert, Dr. Allan Pollack ("Dr. Pollack") to argue this testimony alone was enough for a jury to conclude that Dr. Henze and/or Dr. Ritz caused Mr. Meneweather to suffer injury. Mr. Meneweather would like this Court to hold that deliberate indifference alone should be enough to allow a jury to conclude that causation automatically follows. However, Mr. Meneweather ignores that causation is its own element that must be established by a preponderance of the evidence. *See* Seventh Circuit Pattern Civil Jury Instructions No. 7.17, ¶ 4 (2017 Ed.).

**1.  Mr. Meneweather's expert does not provide sufficient evidence for a reasonable jury to conclude that Dr. Henze or Dr. Ritz caused him to suffer injury.**

The district court correctly found that Mr. Meneweather could not establish the causation element of his claims against Dr. Henze and Dr. Ritz because Mr. Meneweather's expert's testimony was not enough to create a question of fact. (AR 010). Dr. Pollack's limited testimony was that treatment for sensorineural hearing loss should be instituted within 72 hours to 14 days. (AR 467). That treatment, according to Dr. Pollack, would consist of high-dose steroid therapy. (AR 467). What was missing from Dr. Pollack's opinion was whether a high dose of steroids within 72 hours to 14 days would have, more likely than not, prevented Mr. Meneweather from experiencing permanent hearing loss. (AR 067, AR 450). Mr. Meneweather's ultimate hearing loss was a naturally occurring outcome from his sensorineural hearing loss. (AR 359). Mr. Meneweather needed to present "verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of

harm." *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007). This Court has made clear that "verifying medical evidence" is "medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Id.*

Instead of presenting argument to this Court as to how he created a question of fact with verifying medical evidence, Mr. Meneweather incorrectly argues that the district court "wrongfully" imposed a more stringent burden of proof requiring him to show definitively that earlier intervention would have prevented Mr. Meneweather's hearing loss. (Dkt. 12, p. 18). However, what the district court properly held was that Dr. Pollack's opinion does nothing to assist the jury in deciding how "any different treatment by Dr. Henze or Dr. Ritz would have prevented or forestalled [Mr. Meneweather's] hearing loss." (AR 009). In fact, the district court acknowledged that "there may be no good way to know for certain what would have happened" with earlier treatment for Mr. Meneweather before holding that Mr. Meneweather was required to offer some kind of evidence from which a jury could find that had he received the treatment his expert opined was appropriate – Mr. Meneweather's outcome would have been different. (AR 010). This is especially true as to Dr. Ritz, who did not play a role in Mr. Meneweather's treatment plan until sometime between November 9, 2018 and November 21, 2018. (AR 476-77). Given Mr. Meneweather's own expert who opined that the relevant period of time for action was 72 hours to 14 days – it would be impossible for a jury to find that Dr. Ritz caused or contributed to any alleged injury when nearly three months had passed since Mr. Meneweather first complained of symptoms to Dr. Henze. (AR 472).

     i.    <u>Dr. Pollack does not offer the jury any assistance in deciding the element of causation as required by Federal Rules of Evidence 702 and 703</u>.

Mr. Meneweather's arguments ignore the elephant in the room that was apparent to the district court, that Dr. Pollack's opinions were not "based on sufficient facts and data" or that his opinions reflected "a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b), (d). Many of Dr. Pollack's opinions and his testimony do not provide the likelihood or

8

probability that different or additional treatment would have resulted in a different outcome. This deficiency was highlighted by the district court and was the basis for the court's reasoning in granting Dr. Henze's and Dr. Ritz's motions for summary judgment. (AR 011).

Federal Rule of Evidence 702 requires that an expert's opinions be "something more than mere speculation." *Timm v. Goodyear Dunlap Tires North American, Ltd.*, 932 F.3d 986, 994 (7th Cir. 2019). Mr. Meneweather attempts to argue that Dr. Pollack's testimony was sufficiently specific as to the "permanent consequences" that Mr. Meneweather suffered as a result of the care and treatment he received. This is false. Dr. Pollack never gave any admissible opinion or testimony as to how Mr. Meneweather's specific claimed injury was caused by Dr. Henze or Dr. Ritz. Dr. Pollack's expert report starts with a vague conclusory statement that Dr. Henze's and Dr. Ritz's "deviation from the medical standard of care resulted in the plaintiff's injuries…." (AR 456). Dr. Pollack's opinions do not assist the jury in deciding the causation issue. As this Court has previously stated, an expert's opinion must be reliable and help the jury understand the evidence or to determine any fact in issue. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). When an expert's opinion is an assertion without proof, such an opinion should be excluded from evidence pursuant to Rule 702. *Manpower Inc. v. Insurance Company of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013). Dr. Pollack's conclusory opinions or assertions that Mr. Meneweather suffered injury as a result of Dr. Henze and Dr Ritz, without supporting the opinion with facts, data, or his expertise, is pure speculation. Therefore, Dr. Pollack's opinion on causation would not be admissible at trial.

**2.    Determining causation as a matter of law is appropriate in cases like this one.**

Mr. Meneweather relies on a handful of cases to argue that summary judgment on the element of causation was improper. However, Mr. Meneweather fails to acknowledge the myriad of cases in which this Court had found that summary judgment was appropriate as a matter of law when the plaintiff has insufficient evidence for a jury to decide the causation element. *See Gabb v. Wexford Health*

*Sources, Inc.*, 945 F.3d 1027, 1034 (7th Cir. 2019) (affirming summary judgment based on a lack of causation evidence to support a finding that better treatment would have been effective); *see also Pulera v. Sarzant*, 966 F.3d 540, 552 (7th Cir. 2020) (finding that the plaintiff's claims fell short "with the medical and causation evidence" in affirming summary judgment); *Hunter v. Mueske*, 73 F.4th 561, 569 (7th Cir. 2023) (affirming summary judgment because no reasonable jury could find that the defendant was a proximate cause of the plaintiff's injuries); *Norwood v. Ghosh*, 723 Fed. Appx. 357, 366 (7th Cir. 2018) (holding that the evidence in the case "falls short of verifying medical evidence that would allow a reasonable jury to find by a preponderance of the evidence that [] causation actually occurred."). While not all these cases are factually similar – they are included to show that contrary to Mr. Meneweather's argument, it can be appropriate for a court to decide causation as a matter of law on summary judgment when the case warrants.

The cases relied on by Mr. Meneweather are factually distinguishable and do not support overturning the district court's ruling. When the evidence in the case would not allow a reasonable jury to conclude that the plaintiff's injuries were caused by the defendant's action, then summary judgment should be granted. Given the undisputed facts of this case – even when considering Mr. Meneweather's expert's opinions, the district court correctly found that Mr. Meneweather could not prove causation as a matter of law and these cases do not suggest that the district court got it wrong. Mr. Meneweather essentially advocates for a one size fits all approach to the causation element, but as the following cases will show, it is the type of injury claimed to have been caused by a defendant that matters in determining whether there is sufficient verifying medical evidence that will be admissible at trial when deciding whether a plaintiff can prove causation.

      i.    <u>*Roe v. Elyea* does not support Mr. Meneweather's argument</u>.

Mr. Meneweather uses one quote from this Court's decision in *Roe v. Elyea* to argue the district court's ruling should be reversed. 631 F.3d 843, 866 (7th Cir. 2011). Mr. Meneweather argues that

because Dr. Pollack opined that steroid treatment was "standard of care", there was no need for Dr. Pollack to provide "any percentage or probability evidence" as to whether the outcome would be any different. (Pltf's Brief p. 18). However, there are several distinguishing factors that make *Roe* inapplicable to this Court's analysis. First, *Roe* was a decision that reinstated a jury's verdict against the defendant, Dr. Eleya and not the reversal of a dismissal at the summary judgment stage. *Id.* at 853. Second, *Roe* dealt with an IDOC policy regarding an outright ban on treating patients with chronic hepatitis C when the inmate had less than 18 months of incarceration. *Id.* at 850. Finally, this Court in *Roe* was considering the issue of causation related to a blanket denial of treatment and not a delay. *Id.* at 864.

The fact that *Roe* was a decision reinstating a jury's verdict is a substantial distinguishing factor. "To sustain overturning a jury's verdict, the record must demonstrate no legally sufficient basis for a reasonable jury to find for the non-moving party." *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 926 (7th Cir. 2004). This Court has made clear that the jury's verdict should remain "undisturbed unless the moving party can show that no rational jury could have brought in a verdict against him." *Id.* When this Court performed its *de novo* review in *Roe*, it found that there was sufficient evidence to support the jury's conclusion that "some actual compensable injury" was caused by the defendant, which meant that overturning the verdict was not warranted. *Roe*, 631 F.3d at 864.

Additionally, the fact the *Roe* court was considering the application of an express IDOC policy related to causation is significant and provides context to the singular quote that Mr. Meneweather cites to in his appellate brief. The IDOC in *Roe* argued that the plaintiff did not prove causation at trial because the long-term efficacy of the treatment was not known. *Id.* at 866. This Court found that the treatment plaintiff was denied was considered the "standard" even by the IDOC's own policies. *Id.* Therefore, this Court reasoned that there was sufficient evidence to support a finding that the IDOC's failure to treat the plaintiff consistent was its own standard caused or contributed to the

plaintiff's injury and discomfort during his incarceration. *Id.* Here, while Mr. Meneweather's expert cites non-specific literature regarding the treatment of sensorineural hearing loss with high dose of steroids, this was not an express policy from the IDOC or Wexford (Dr. Henze and Dr. Ritz's employer). (AR 449). Therefore, any alleged deliberate indifference by Dr. Henze and Dr. Ritz in failing to follow the guidelines or literature does not automatically mean that there is evidence of causation.

Finally, the issue in *Roe* was whether there was sufficient evidence of causation to support the jury's verdict after the IDOC's policy resulted in the plaintiff being denied any treatment for his hepatitis C. *Id.* at 865. This is not the case here. In this case, Mr. Meneweather was provided treatment consistent with the standard of care that was based on his physicians at Sheridan using their independent medical judgment. Neither Dr. Henze nor Dr. Ritz relied on an express policy or procedure in determining the best course of treatment for Mr. Meneweather's complaints. Nor did either provider flat out deny Mr. Meneweather treatment for a known condition. *Roe* does not support this Court reversing the district court's finding that Mr. Meneweather could not provide sufficient evidence of causation for the jury.

ii.     <u>*Miranda v. County of Lake* does not support Mr. Meneweather's argument</u>

Mr. Meneweather also relies on this Court's opinion in *Miranda v. County of Lake* to argue that he was not required to prove "but for" causation. 900 F.3d 335, 347 (7th Cir. 2018). *Miranda* is also factually distinguishable from the case at bar. The causation issue in *Miranda* was whether there was verifying medical evidence to support plaintiff's claims that the defendants caused or contributed to Lyvita Gomes's death. *Id.* at 341. Given the evidence in the *Miranda* case, connecting Ms. Gomes's death to the defendant doctors' conduct was less strenuous than connecting Dr. Henze and Dr. Ritz to Mr. Meneweather's alleged injuries here.

*Miranda* does not warrant this Court reversing the district court's grant of summary judgment on the issue of causation. In *Miranda*, this Court was tasked with considering whether the district court properly granted summary judgment to the defendant doctors on the plaintiff's wrongful death claims. *Id.* at 346. The *Miranda* court considered whether the plaintiff had sufficient "verifying medical evidence" from which a reasonable jury could find that the defendant doctors delay in providing medical care caused or contributed to Ms. Gomes's death. *Id.* at 347. This Court found the fact that Ms. Gomes's autopsy connected her death to complications of starvation and dehydration was enough to create a question of fact on causation and the wrongful death claims should have gone before the jury. *Id.* This Court's reasoning was pretty clear that the autopsy report "did not mince words about Gomes's cause of death…" *Id.*

The evidence here is not so clear cut. The district court's opinion was not requiring that Mr. Meneweather prove "definitively" that his hearing loss was caused by Dr. Henze and/or Dr. Ritz's conduct. Instead, the district court was following the law in requiring that Mr. Meneweather show "that it is reasonably likely that his hearing loss would have been prevented or avoided if there had been proper treatment." (AR 010). This is a preponderance of the evidence standard, which is consistent with the Seventh Circuit Pattern Civil Jury Instruction 1.27 that states that a preponderance of the evidence standard means the jury "must be persuaded that it is more probably true than not true." This standard is the reason the district court suggested that had Dr. Pollack provided any properly supported percentage of probability that the steroid treatment would have improved Mr. Meneweather's chances – that the issue of causation may have proceeded to the jury. (AR 011). This Court in *Miranda* relied on the autopsy report (as a medical record) as sufficient verifying medical evidence to allow the jury to decide whether the defendant doctors caused or contributed to Ms. Gomes' death. There is no similar verifying medical evidence here and therefore, *Miranda* does not warrant this Court reversing the district court's grant of summary judgment.

### iii.    *McDonald v. Hardy* does not support Mr. Meneweather's argument

Next, Mr. Meneweather relies on this Court's opinion in *McDonald v. Hardy* to suggest that it was Dr. Henze's and Dr. Ritz's burden to establish that Mr. Meneweather's hearing would not have changed had he been given the high dose steroids his expert, Dr. Pollack opined should have been given. 821 F.3d 882 (7th Cir. 2016). Unfortunately for Mr. Meneweather, this Court did not suddenly create a burden shifting requirement for causation in deliberate indifference claims in *McDonald*. The single quote that Mr. Meneweather uses from the *McDonald* case was dicta referencing the IDOC defendants repeated failure to provide the plaintiff with the requested documents and medical records during discovery. *Id.* at 886. In conjunction with concerns over the discovery issues created by the defendants, this Court reasoned that summary judgment should not have been granted because the defendants provided no medical expert support for their arguments that the plaintiff no longer needed a low cholesterol diet. *Id.* at 892. Therefore, the only evidence to consider was the plaintiff's serious medical condition and the defendants' "interference with a physician's assessment that a low-cholesterol diet was necessary…" *Id.* It was these factors that ultimately led this Court to send the case back to the district court "for further proceedings." *Id.* At no point during its opinion in *McDonald*, did this Court find that it was a defendant's burden to prove the absence of causation. Therefore, this Court's opinion in *McDonald* does support overturning the district court's ruling on the issue of causation in this case.

### iv.    *Jackson v. Sheriff of Winnebago County* is equally inapposite to the facts here.

Finally, Mr. Meneweather relies on this Court's ruling in *Jackson v. Sheriff of Winnebago County* to suggest that even the mere possibility that earlier treatment could have changed the outcome is enough to create a question of fact. 74 F.4th 496 (7th Cir. 2023). Again, this case is factually distinct from this case. The plaintiff in *Jackson* presented a plethora of evidence from which a jury could reasonably find that the defendants' failure to act sooner diminished Eugene Washington's chance of survival. *Id.* at

502. The evidence necessary to suggest that a delay in receiving lifesaving treatment for cardiac arrhythmia is categorically different than evidence to establish sensorineural hearing loss and whether a delay in receiving steroids contributed to the hearing loss – especially when the presentation of Mr. Meneweather's symptoms suggested otitis media and impacted cerumen.

The defendants in *Jackson* argued to the district court that Mr. Washington "was dead long before the guards arrived." *Id.* at 501. This Court pointed to all the evidence that could potentially support a finding that Mr. Washington's death was caused by the defendants delay in coming to his aid. First, this Court pointed to the undisputed evidence that Mr. Washington was alive when his cellmate first rang the intercom seeking emergency medical attention. *Id.* To further this point, this Court highlighted Dr. Mark Peters's medical testimony. *Id.* Dr. Peters performed an autopsy on Mr. Washington and found that Mr. Washington's cardiac arrhythmia was caused by sleep apnea. *Id.* Dr. Peters testified that this type of cardiac arrhythmia could cause death "very fast or very slowly" but Dr. Peters opined that Mr. Washington was "very likely in an arrhythmia" when his cell mate woke to find Mr. Washington gasping for air. *Id.* Additionally, Dr. Peters testified that the congestion present in Mr. Washington's lungs at autopsy would not have been present if Mr. Washington had died instantaneously upon going into cardiac arrhythmia. *Id.* While Dr. Peters never provided testimony that earlier medical intervention would have made a difference – Dr. Peters never specifically ruled out that possibility either. *Id.*

This Court also highlighted the testimony of Mr. Washington's cell mate that testified about the progression of Mr. Washington's symptoms while he waited for the guards to respond to the intercom and how Mr. Washington's condition declined during the delay. *Id.* Ultimately, this Court in looking at the totality of the evidence found that the plaintiff presented sufficient verifying medical evidence that could "permit[ ] the fact-finder to determine whether the delay caused additional harm." *Id.* at 501. Given the progression of symptoms as described by Mr. Washington's cell mate, this Court

held that "[i]t would not be unreasonable to find that starting [lifesaving] treatment before Washington's condition had so deteriorated would have improved his odds of survival." *Id.* at 502. In *Jackson*, the plaintiff could point to multiple pieces of evidence that could create a question of fact on causation and make it possible that Mr. Washington's death was caused by the guards' delay in responding. However, here there is no medical evidence or testimony that any earlier treatment in this case could have changed the course of Mr. Meneweather's hearing loss as correctly pointed out by the district court. (AR 011). Therefore, this case does not support reversing the district court's ruling.

### 3.     Mr. Meneweather attempts to change the burden of proof to establish the causation element of a deliberate indifference claim.

Mr. Meneweather argues (without citation or support) that absent "absolute certainty" – the district court should have denied Dr. Henze's and Dr. Ritz's motion for summary judgment. However, Mr. Meneweather ignores that the burden for establishing this necessary element of his claim is by a preponderance of the evidence, which means "more probably true than not." Seventh Circuit Pattern Civil Jury Instruction No. 1.27 (2017 Ed.). Mr. Meneweather's expert never provided any opinion or testimony that had Mr. Meneweather received the steroid treatment – more likely than not Mr. Meneweather's hearing loss could have been prevented or not as pronounced during the initial 72 hours to 14 days window. (AR 009). Dr. Pollack opined only that a delay in starting the steroid treatment could "(1) prevent one from getting adequate treatment for that disease process" and "(2) prevent someone from getting a bunch of unnecessary treatments that aren't required based on that diagnosis…" (AR 450). The district court correctly pointed this out stating, "Dr. Pollack does not, for example, offer any percentage or probability evidence (supported by medical literature, his own experience, or otherwise) for how often, in similar situations, prompt treatment with high-dose steroids prevents or forestalls hearing loss." (AR 011). In fact, as the district court correctly found, the only definitive testimony regarding this point came from Dr. Henze's and Dr. Ritz's retained expert, Dr. Thomas Tami ("Dr. Tami"). (AR 011). Dr. Tami opined that steroids have "not been shown to

significantly change the ultimate outcome of the hearing loss" and "any delay in getting to the audiologist or the otolaryngologist would have had no impact on the ultimate outcome." (AR 359).

While Mr. Meneweather was not required to prove his entire case at summary judgment – Mr. Meneweather was required to present evidence "sufficient to prove an essential element of a case on which [he] bears the burden of proof" in order to survive summary judgment. *Sims v. Mulcahy*, 902 F.2d 524, 539 (7th Cir. 1990).  Nowhere in Dr. Pollack's report or deposition testimony does he opine that had Mr. Meneweather been given the high dose steroids, more likely than not, Mr. Meneweather's hearing loss would have been prevented or would have been less severe. Nor can Dr. Pollack come to trial and give any testimony in that regard for the first time, as that would be a clear Rule 26(a)(2)(B) violation. *See Gicla v. United States*, 572 F.3d 407, 410 (7th Cir. 2009) ("Federal Rule of Civil Procedure 26(a)(2)(B) requires the party who proffers an expert to make certain pre-trial disclosures, including, among other things, (i) a statement of the opinions the expert will express, along with the bases and reasons for those opinions…"). Dr. Pollack was given the explicit opportunity during his deposition to give an opinion that complied with the "more probably true than not" burden of proof when he was asked "And can a delay in the start of treatment result in the permanent hearing loss that – or can a delay forfeit the opportunity to reverse hearing loss?" (AR 449-50). Dr. Pollack's response was vague and unhelpful as correctly pointed out by the district court. (AR 009-10). This means the evidence argued during summary judgment on the causation issue was the same evidence the jury would hear, and the district court correctly found that Mr. Meneweather could not establish that Dr. Henze or Dr. Ritz caused Mr. Meneweather to suffer an injury. (AR 011).

Mr. Meneweather again relies on several cases that do not support his arguments to lower his burden for establishing a question of fact on the issue of causation. Mr. Meneweather argues that this Court in *Ortiz v. City of Chicago* ruled that it "takes a broad view of what amounts to causation…" 656 F.3d 523 (7th Cir. 2011); (Pltf's Brief, p. 23). However, the circumstances surrounding the causation

inquiry in *Ortiz* are similar to the inquiry made by this Court in *Jackson* discussed above. 656 F.3d at 535 ("Where an obviously ill detainee dies in custody and the defendants' failure to provide medical care is challenged, the causation inquiry is quite broad."). This is not a case of an "obviously ill" patient dying in custody. It is undisputed that neither Dr. Henze nor Dr. Ritz caused the condition that started Mr. Meneweather's sensorineural hearing loss. As pointed out by Dr. Tami, sensorineural hearing loss is idiopathic 90% of the time. (AR 374). Therefore, Mr. Meneweather needed to present evidence, admissible at trial, that would allow a jury to find more likely than not Dr. Henze and Dr. Ritz caused Mr. Meneweather's hearing loss to worsen by not giving him the high dose steroids Dr. Pollack believed he needed.

### 4.     Mr. Meneweather did not argue to the district court that any delay caused him to experience unnecessary pain and suffering.

During summary judgment, Mr. Meneweather never argued that Dr. Henze or Dr. Ritz should be held liable for Mr. Meneweather suffering any unnecessary pain related to his hearing condition. (AR 091, ECF 123). Instead, Mr. Meneweather's response to summary judgment focused his arguments on the conduct of Dr. Henze and Dr. Ritz and whether that conduct rose to the level of deliberate indifference. Now recognizing the unlikelihood that the permanency of his hearing loss being attributable to Dr. Henze and Dr. Ritz – Mr. Meneweather argues to this Court for the first time that summary judgment was improper because there was sufficient evidence for a jury to find that the alleged delay by Dr. Henze and Dr. Ritz caused him to experience unnecessary pain and suffering. (Pltf's Brief, p. 30). This is improper. *See Betco Corp. v. Peacock,* 876 F.3d 306, 309 (7th Cir. 2017) ("this court has long refused to consider arguments that were not presented to the district court in response to summary judgment motions"). This argument should be deemed waived and not be considered as a basis for reversing the district court's ruling.

**B.** **The District Court Erred in Holding That a Reasonable Jury Could Find Dr. Henze and Dr. Ritz Were Deliberately Indifferent.**

Given this Court's ability to review the district court's ruling *de novo*, and in response to Mr. Meneweather's arguments in the first third of his brief – Dr. Henze and Dr. Ritz believe that this Court should find that there was insufficient evidence to support a finding that either Dr. Henze or Dr. Ritz acted with deliberate indifference. Even when considering all the evidence in the case in a light most favorable to Mr. Meneweather – it is clear that the district court incorrectly found that "a reasonable jury could find that [Dr. Henze's and Dr. Ritz's] treatment decisions were such a substantial departure from accepted standards that they reflected deliberate indifference." (AR 007). First, the district court should have never considered many of the "facts" argued by Mr. Meneweather in his response brief given his blatant disregard for the rules. Second, the district court should have considered the conduct of each defendant separately, given their very different roles in this case when deciding on the subjective component of Mr. Meneweather's claims. (AR 051). When considering the record anew – this Court should find that the district court incorrectly found that there was a question of fact on deliberate indifference element as to both defendants.

**1.** **Mr. Meneweather's failure to respond to Defendants' Local Rule 56.1 Statement of Material Facts warrants affirming the District Court's ruling.**

Mr. Meneweather acknowledges that he failed to respond to Dr. Henze's and Dr. Ritz's local rule 56.1(a)(3) statement of material facts. (Pltf's Brief, p. 9). By virtue of his failure to properly respond, each of those facts should be deemed admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015). This Court has made clear that "[w]hen a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for the purposes of the motion." *Id.* Mr. Meneweather's attempt to contradict Dr. Henze's and Dr. Ritz's rule 56.1(a)(3) facts by copying and pasting chunks of testimony

into the body of his response brief should never have been considered by the district court and should

not be considered by this Court either.

### 2. No reasonable jury could find that Dr. Henze substantially departed from acceptable standards of care.

The evidence in this case cannot support a finding that Dr. Henze "actually knew of and

disregarded a substantial risk of harm" to Mr. Meneweather. *Petties v. Carter*, 836 F.3d 722, 728 (7th

Cir. 2016). The district court failed to acknowledge Dr. Henze's right to rely on her medical judgment

when making treating decisions for Mr. Meneweather on August 20, 2018 and September 27, 2018.

(AR 007). No reasonable jury could find that Dr. Henze's medical decision making during those two

visits was "so far afield of accepted professional standards as to raise the inference that it was not

actually based on medical judgment." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir.

2021) quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). As this Court has repeatedly held,

"where the evidence shows that a decision was based on medical judgment, a jury may not find

deliberate indifference, even if other professionals would have handled the situation differently." *Id.*

"Evidence that *some* professionals would have chosen a different course of treatment is insufficient to

make out a constitutional claim." *Id.* quoting *Petties*, 836 F.3d at 729 (emphasis in original).

The district court expressly failed to consider the difference of opinion on the appropriateness

of Dr. Henze's treatment between Dr. Henze's and Dr. Ritz's expert, Dr. Tami and Mr. Meneweather's

expert Dr. Pollack. (AR 006) ("So the Court sets aside Dr. Tami's opinion for the present purposes,

with one exception as noted below."). When looking at the totality of the treatment provided by Dr.

Henze in response to Mr. Meneweather's clinical presentation – Dr. Henze's treatment was reasonable

and based on her education, training, experience, and the circumstances in which she was practicing.

*See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 764 (7th Cir. 2021) ("The balance between

security and medical concerns adds an additional layer…to consider.").

Dr. Henze performed a comprehensive physical examination of Mr. Meneweather's right ear at her first visit with him on August 20, 2018. (AR 060, AR 472). It is undisputed by even Dr. Pollack that Mr. Meneweather had a history of upper respiratory infection symptoms due to allergies. (AR 066, AR 444). Dr. Henze used an otoscope to do a full examination of Mr. Meneweather's ear. (AR 189). During this examination, Dr. Henze noted the presence of a "white effusion" in Mr. Meneweather's right ear canal. (AR 472). Based on Dr. Henze's physical examination, her diagnosis was that Mr. Menweather was suffering from an ear infection. (AR 196). With that diagnosis, Dr. Henze prescribed Maxitrol drops and an oral antibiotic to treat Mr. Meneweather's right ear infection. (AR 472). Dr. Pollack agreed that "based on what [Dr. Henze] saw and she documented, an antibiotic would not necessarily be mandated but certainly would not necessarily fall far below the standard of care." (AR 437).

The next time Dr. Henze treats Mr. Meneweather is September 27, 2018. (AR 475). Before even considering the appropriateness of the treatment provided and the medical decisions made – it must be noted that according to both experts, if high dose steroids are going to be administered for sensorineural hearing loss those should be started within the first 72 hours to 14 days. (AR 358, AR 449). Even assuming *arguendo* that day one of that window was Dr. Henze's first visit on August 20th, which the evidence does not support, by the time Dr. Henze saw Mr. Meneweather for the second time on September 27th, the 14-day window had closed. Not only is this further support for the lack of causation as discussed above, but also establishes that Dr. Henze cannot be found to be deliberately indifferent when the "hearing loss" injury would be a foregone conclusion by that date according to Mr. Meneweather's expert. However, even when looking at the undisputed evidence in the case, Dr. Henze's treatment on September 27th does not represent a substantial departure from accepted medical standards.

On September 27, 2018, Dr. Henze performed another comprehensive exam of Mr. Meneweather's right ear. (AR 209). Dr. Henze noted that the infection had cleared. (AR 210). Dr. Henze, in using her medical judgment, determined that Mr. Meneweather's continued hearing issues were related to a retracted and immobile tympanic membrane from eustachian tube dysfunction. (AR 210) (AR 439). At this visit, Dr. Henze does not document that Mr. Meneweather complained of tinnitus (ringing in the ear) or pressure in his ear. (AR 442). Yet somehow, Mr. Meneweather's expert takes the absence of this documentation as a Dr. Henze's failure to document the actual issues Mr. Meneweather was experiencing. (AR 442). What is more likely is that Dr. Pollack believes Mr. Meneweather should have been experiencing tinnitus and pressure in his right ear because that is what fits Dr. Pollack's narrative. Despite this, Dr. Pollack admits, as he should, that ultimately, he does not know exactly what symptoms Mr. Meneweather had on September 27th other than what is documented in Dr. Henze's treatment note. (AR 442-43).

The district court was incorrect that there was sufficient evidence from which a jury could find Dr. Henze deliberately indifferent to Mr. Meneweather's right ear issues. Both experts agree that primary care physicians like Dr. Henze, often misdiagnose "middle ear processes." (AR 379). While it is clear that Mr. Meneweather's presentation and symptoms on August 20th and September 27th supported Dr. Henze's diagnosis and treatment renedered – at worst, Dr. Henze misdiagnosed Mr. Meneweather. Given that this is common amongst primary care physicians, it cannot be said that "no minimally competent doctor could have made the same assessment." *Stewart*, 14 F.4th at 764. Therefore, this Court should find that the district court incorrectly found a question of fact as to whether Dr. Henze was deliberately indifferent.

### 3.    The record was insufficient to find that Dr. Ritz provided treatment to Mr. Meneweather in order to be found deliberately indifferent.

The evidence of deliberate indifference against Dr. Ritz is even more flimsy. It is undisputed that Dr. Ritz never examined Mr. Meneweather. (AR 298). Dr. Ritz's role in August and September

2018, was the Utilization Management ("UM") Director. (AR 290). As the UM Director, Dr. Ritz would review the requests for medical services from the various institutions in which Wexford operates. (AR 291). Prior to Dr. Ritz's review, as a part of the first step in the process a UM nurse would compile all medical services requests and supporting documentation that was submitted by the site. (AR 296). Dr. Ritz would then review the request and the clinical information that was submitted with the medical services request. (AR 292). If Dr. Ritz was unable to approve the request "at face value," Dr. Ritz would then participate in the collegial review phone calls. (AR 292). During collegial reviews, there was a physician to physician phone call during which there would be a discussion regarding the medical request and the circumstances surrounding the request before making a decision. (AR 292). If there was a course of therapies needed before the medical request could be approved, an alternative treatment plan would be created. (AR 292).

Specific to Mr. Meneweather, a medical services request was created by Dr. Christian Okezie on November 9, 2018. (AR 295-96). The request was for a referral to University of Illinois Chicago ("UIC") ENT clinic. (AR 295). On or around November 21, 2018, an alternative treatment plan was given in response to the request for Mr. Meneweather. (AR 299-300). Dr. Ritz made the alternative treatment plan based on the clinical information provided and his experience as a primary care physician. (AR 300). In Dr. Ritz's medical opinion, Mr. Meneweather's symptoms were common, and his hearing loss could have been caused by a number of things, including a bacterial or viral infection, or persistent inflammation. (AR 300). Dr. Ritz was also aware that Mr. Meneweather had been treated for an infection of the middle ear (otitis media) twice. (AR 303). Based on this information, Dr. Ritz recommended that Mr. Meneweather first undergo an audiology test on site at Sheridan. (AR 477). After Mr. Meneweather had the audiology test on site, Dr. Ritz approved a referral to an audiologist on January 11, 2019. (AR 306).

As this Court astutely recognized in *Goodloe v. Sood*, Dr. Ritz's role as the UM Director warrants a different look at the evidence. 947 F.3d 1026, 1032 (7th Cir. 2020). In *Goodloe*, this Court considered the grant of summary judgment in favor of Dr. Neil Fisher who was the UM Director at the time the plaintiff was seeking treatment for anal warts and persistent rectal pain. *Id.* at 1028. The plaintiff's treating physician at the prison consulted with Dr. Fisher in his role as the UM director several times regarding the course of treatment the plaintiff was receiving. *Id.* at 1032. This Court found that Dr. Fisher's role in the plaintiff's course of treatment was too limited in order for a jury to find deliberate indifference. *Id.* In so finding, the *Goodloe* court confirmed that the plaintiff was required to show something more than mere negligence. *Id.* Additionally, this Court held that Dr. Fisher's decision not to approve the plaintiff's wart removal surgery was not done with a deliberate intention to prolong the plaintiff's pain. *Id.*

The facts of this case are very similar to the facts of *Goodloe*. Here, Dr. Ritz never examined or provided direct treatment to Mr. Meneweather just as Dr. Fisher did not treat the plaintiff in *Goodloe*. Dr. Ritz reviewed the clinical documentation submitted with the referral request and first recommended the onsite audiology test which was recommended as a part of the *Holmes* class action settlement, just as Dr. Fisher consulted with the plaintiff's prison doctor in *Goodloe* before making recommendations. (AR 306). Dr. Ritz found this to be an appropriate first step given Mr. Meneweather's clinical presentation. (AR 306). There is no evidence to support a finding that Dr. Ritz was disregarding a known risk to Mr. Meneweather or that his medical decisions were so far afield that "no minimally competent professional would have so responded under those circumstances." *Stewart*, 14 F.4th at 763. There was not enough evidence in this case from which a jury could find that Dr. Ritz was ignored a risk of harm to Mr. Meneweather or that he persisted in a course of treatment that he knew would be ineffective. Therefore, the district court incorrectly found that a question of fact remained on the subjective component of Mr. Meneweather's claims against Dr. Ritz.

## CONCLUSION

The district court appropriately granted summary judgment in favor of Defendants, Dr. Marlene Henze and Dr. Stephen Ritz. Regardless of whether this Court finds that the district court was correct in holding that Plaintiff, Rickey Meneweather could not establish the causation element of his claims or whether this Court finds that the district court was incorrect in finding that a question of fact remains on the subjective component of Plaintiff's deliberate indifference claims – after completing a review of the entire record this Court should affirm the district court's order granting summary judgment in favor of Defendants.

**CONNOLLY KRAUSE, LLC**

 */s/ Jeffrey J. Escher*

Jeffrey J. Escher
Attorney(s) for the Defendants-Appellees,
Dr. Marlene Henze and Dr. Stephen Ritz

Robert S. Tengesdal
Jeffrey J. Escher
500 W. Madison Street, Suite 3900
Chicago, IL 60661
Phone: (312) 253-6200
Fax:     (312)253-6201

**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)(B),
FRAP RULE 32(g) and CR 32(c)**

The undersigned, counsel of record for the Defendants-Appellees, Dr. Marlene Henze and Dr. Stephen Ritz, furnishes the following in compliance with F.R.A.P Rule 32(a)(7), F.R.A.P. 32(g) and CR 32(c):

I hereby certify that this brief conforms to the rules contained in F.R.A.P Rule 32(a)(7)(B) for a brief produced with a proportionally spaced font.

The length of this brief is <u>8415</u> words.

Dated September 16, 2024.

CONNOLLY KRAUSE, LLC

_/s/ Jeffrey J. Escher_

Jeffrey J. Escher
Attorney(s) for the Defendants-Appellees,
Dr. Marlene Henze and Dr. Stephen Ritz

Robert S. Tengesdal
Jeffrey J. Escher
500 W. Madison Street, Suite 3900
Chicago, IL 60661
Phone: (312) 253-6200
Fax:     (312)253-6201

## PROOF OF SERVICE

The undersigned, counsel of record for the Defendants-Appellees, Dr. Marlene Henze and Dr. Stephen Ritz, certifies that on September 16, 2024, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system, and served by the CM/ECF system upon all registered participants, and that two copies of the following counsel of record for the Plaintiff-Appellant:

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125

**CONNOLLY KRAUSE, LLC**

*/s/ Jeffrey J. Escher*

Jeffrey J. Escher
Attorney(s) for the Defendants-Appellees,
Dr. Marlene Henze and Dr. Stephen Ritz

Robert S. Tengesdal
Jeffrey J. Escher
500 W. Madison Street, Suite 3900
Chicago, IL 60661
Phone: (312) 253-6200
Fax:     (312)253-6201