No. 24-1214

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

RICKEY C. MENEWEATHER,

Plaintiff–Appellant,

v.

STEPHEN RITZ and MARLENE HENZE,

Defendants–Appellees.

On Appeal from a Final Order of the
United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 1:19-cv-6643, Hon. Matthew F. Kennelly

## REPLY BRIEF FOR APPELLANT

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Counsel for Appellant

October 15, 2024

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities................................................................................... iii

Introduction ............................................................................................... 1

Argument ................................................................................................... 2

I.    An expert medical report opining that Appellees having timely provided the standard of care could have prevented "permanent consequences" creates a dispute as to causation. ................................. 2

    A.    Appellees insist upon ignoring Dr. Pollak's expert opinion, but that opinion firmly establishes a factual dispute about causation. ............ 2

    B.    Appellees' attempts to distinguish this Court's substantial precedent supporting Mr. Meneweather are unpersuasive and depend upon wrongly disregarding Dr. Pollak's expert opinion. ................ 5

II.    Appellees' proposed alternative grounds for affirmance are foreclosed by precedent or otherwise unavailing. ................................. 9

III.    Appellees' failure to address the merits of Mr. Meneweather's delay argument is fatal, because his delay argument was not waived. ..................... 12

Conclusion................................................................................................. 17

Certificates................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Catholic Bishop of Chicago,*
   759 F.3d 645 (7th Cir. 2014) ................................................................ 15

*Central States v. Midwest Motor Express,*
   181 F.3d 799 (7th Cir. 1999) ................................................................ 15

*Clarett v. Roberts,*
   657 F.3d 664 (7th Cir. 2011) ................................................................ 15

*Cole v. Fromm,*
   94 F.3d 254 (7th Cir. 1996) .................................................................. 13

*Conley v. Birch,*
   796 F.3d 742 (7th Cir. 2015) ................................................................ 13

*Cracco v. Vitran Express, Inc.,*
   559 F.3d 625 (7th Cir. 2009) ................................................................ 11

*Curtis v. Costco Wholesale Corp.,*
   807 F.3d 215 (2015) ............................................................................. 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993) .............................................................................. 5

*Dixon v. ATI Ladish LLC,*
   667 F.3d 891 (7th Cir. 2012) ................................................................ 14

*Dorris v. Unum Life Ins. Co. of Am.,*
   949 F.3d 297 (7th Cir. 2020) ................................................................ 15

*Elder v. Holloway,*
   510 U.S. 510 (1994) ............................................................................. 14

*Gabb v. Wexford Health Sources, Inc.,*
   945 F.3d 1027 (7th Cir. 2019) ............................................................... 7

*Gayton v. McCoy,*
   593 F.3d 610 (7th Cir. 2010) ................................................................. 5

*Hess v. Garcia,*
   72 F.4th 753 (7th Cir. 2023) ................................................................ 14

*Hunter v. Mueske,*
   73 F.4th 561 (7th Cir. 2023) .................................................................. 8

*Jackson v. Sheriff of Winnebago Cnty.,*
   74 F.4th 496 (7th Cir. 2023) .............................................................. 3, 7

*Kamen v. Kemper Fin. Servs. Inc.,*
   500 U.S. 90 (1991) .............................................................................. 14

*King v. Kramer,*
   763 F.3d 635 (7th Cir. 2014) ................................................................ 12

*Kramer v. Banc of America Securities, LLC,*
   355 F.3d 961 (7th Cir. 2004) ................................................................ 15

*Little v. Cox's Supermarkets,*
   71 F.3d 637 (7th Cir. 1995) .................................................................. 11

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Manpower Inc. v. Insurance Company of Pa.*,
   732 F.3d 796 (7th Cir. 2013) ........................................................ 4

*McCottrell v. White*,
   933 F.3d 651 (7th Cir. 2019) ...................................................... 16

*Miranda v. County of Lake*,
   900 F.3d 335 (7th Cir. 2018) ........................................................ 7

*Norwood v. Ghosh*,
   No. 15-2138 (7th Cir. Jan. 26, 2018) ........................................ 8

*Petties v. Carter*,
   836 F.3d 722 (7th Cir. 2016) (en banc) .................................. 13

*Puffer v. Allstate Ins. Co.*,
   675 F.3d 709 (7th Cir. 2012) ...................................................... 15

*Pulera v. Sarzant*,
   966 F.3d 540 (7th Cir. 2020) ........................................................ 8

*Qui Ping Li v. Holder*,
   612 F.3d 603 (7th Cir. 2010) ...................................................... 15

*Roe v. Elyea*,
   631 F.3d 843 (7th Cir. 2011) ........................................................ 6

*Stevo v. Frasor*,
   662 F.3d 880 (7th Cir. 2011) ...................................................... 11

*United States v. Hassebrock*,
   663 F.3d 906 (7th Cir. 2011) ...................................................... 15

*Williams v. Liefer*,
   491 F.3d 710, 715 (7th Cir. 2007) .............................................. 2

# INTRODUCTION

Several aspects of Appellees' briefing only underscore why Mr. Meneweather should win this appeal. Most importantly, Appellees simply refuse to treat Dr. Pollak's expert report as "evidence," and so repeatedly dismiss or ignore the dispute over causation that a jury must resolve here. That refusal also explains why Appellees' attempts to distinguish many citations in Mr. Meneweather's Opening Brief fall flat—distinctions that depend on dismissing Dr. Pollak's opinion fail. And their own new citations are generally inapposite, including some that do not even deal with medical care at all, or affirmatively support Mr. Meneweather. Second, perhaps recognizing those problems, Appellees seek affirmance on alternative grounds. But the District Court correctly explained that a jury could find deliberate indifference, and Appellees' argument predicated upon Northern District of Illinois Local Rules is foreclosed by this Court's precedent. Third, Appellees refuse even to engage with the merits of Mr. Meneweather's argument about the undisputed delay in treatment and his resulting damages—offering a one-paragraph argument about waiver that ignores several pages of Mr. Meneweather's summary judgment opposition that more than sufficiently preserved the argument. If anything, they have waived any substantive response of their own to that theory, requiring reversal.

Ultimately, because Dr. Pollak's report directly addresses the causation issue, and because they did not dispute his qualifications or the report's admissibility, a reasonable jury could agree with Dr. Pollak instead of Appellees. This Court should reverse and remand this case for the trial needed to resolve numerous fact disputes.

## ARGUMENT

**I.   An expert medical report opining that Appellees having timely provided the standard of care could have prevented "permanent consequences" creates a dispute as to causation.**

Appellees' briefing invites this Court to make the same causation error that the District Court made, and it illustrates why this Court should reverse. At bottom, Appellees simply refuse to acknowledge or engage with the portion of Dr. Pollak's expert report that directly addresses causation, arguing instead that Dr. Pollak's "opinions would not have assisted the jury in any way," Response Br. at 5, and ignoring the opinion's existence to insist that Mr. Meneweather did not "present verifying medical evidence" to make out his claim. Response Br. at 7-8. That refusal explains why Appellees' arguments fail, and why their discussion of both Mr. Meneweather's cited authority and their own new citations miss the mark.

**A.   Appellees insist upon ignoring Dr. Pollak's expert opinion, but that opinion firmly establishes a factual dispute about causation.**

First, Dr. Pollak's expert medical report is exactly the verifying medical evidence that Appellees claim Mr. Meneweather lacks, and the relevant part of it directly creates a dispute about causation. Indeed, Appellees' own expert, Dr. Tami, only confirms this. Appellees' Response Brief explains that a plaintiff must produce evidence "that tends to confirm or corroborate a claim that the delay" in treatment "was detrimental," Response Br. at 8 (citing *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007)), or "medical evidence that could permit the fact-finder to determine whether the delay caused additional harm." Response Br. at 15 (citing *Jackson v.*

*Sheriff of Winnebago Cnty.*, 74 F.4th 496, 501 (7th Cir. 2023)). Mr. Meneweather's Opening Brief cited both *Williams* and *Jackson*, among many other cases, and both are instructive here. In *Jackson*, as Mr. Meneweather noted, the very page cited by Appellees explains that the plaintiff did not even have a medical expert—but this Court reversed because the defendants' medical expert "never ruled out the possibility" that "earlier medical intervention would have made a difference." *Jackson*, 74 F.4th at 501. The *Williams* plaintiff did not have an expert, either, but the same page cited by Appellees in that case explains that equivocal testimony by the defendant's expert that "the delay did not appear to have adversely affected [the plaintiff's] condition" precluded judgment for the defendants. *Williams*, 491 F.3d at 715. Here, where Appellees' expert Dr. Tami equivocated in his expert opinion and called the efficacy of high-dose steroids—the standard of care—"far from conclusive," AR 372, he has not "ruled out the possibility" that intervention could have changed the outcome. *Williams*, 491 F.3d at 715. Dr. Pollak's opinion, which specifically said that Appellees' substantial departure from the standard of care had "den[ied]" the plaintiff the right to obtain appropriate therapy in a timely fashion to avoid permanent consequences associated with sudden sensorineural hearing loss," AR 459, sharpens the dispute as to causation that a jury must resolve.

Worse, Appellees treat the District Court's acknowledgment of a fact dispute about the possible effect on Mr. Meneweather's permanent hearing as a reason to affirm, rather than an error under the summary judgment standard. Appellees cite exactly that portion of the District Court opinion—the Court admitting that "there may be no good way to know for certain what would have happened" with timely

treatment, Response Br. at 8 (citing AR 10)—and deal with it simply by dismissing Dr. Pollak's expert opinion that timely, appropriate treatment could have forestalled permanent hearing loss for Mr. Meneweather. Appellees also do not engage with Mr. Meneweather's arguments about their *own* expert's equivocation on the possibility that the standard of care for Mr. Meneweather's condition—high-dose steroids— might have forestalled permanent hearing loss. As Mr. Meneweather pointed out in his opening brief, *see* Opening Br. at 21-22, Dr. Tami agreed that timely treatment "could potentially reduce something that could cause sensorineural hearing loss," AR 372, which, again, crystallizes the fact disputes that a jury must resolve here.

Finally, and perhaps fatally for their argument to affirm on causation, Appellees ultimately preview arguments that they should make—and did not make below—in *Daubert* motions or motions *in limine*. Appellees explain that they believe that Dr. Pollak's opinion was not "based on sufficient facts and data" and that he did not reliably apply "principles and methods to the facts" here, citing Fed. R. Evid. 702(b) & 702(d). Response Br. at 8. They attack Dr. Pollak's conclusions, and they argue that he "never gave any admissible opinion or testimony as to" causation. Response Br. at 9. But in doing so, they cite case law specifically addressing district court exclusion of expert opinions upon motion of a party, and the relevant standard for that. *See* Response Br. at 9 (citing *Manpower Inc. v. Insurance Company of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013)); *see Manpower Inc.*, 732 at 801 (discussing ISOP having "filed a motion *in limine* to exlcude [Manpower Inc.'s expert's] opinion"). In the District Court, Appellees never filed either *Daubert* motions or motions *in limine*. *See generally* AR 73-94. And this Court has explained—including in the specific context of a prison

4

medical care case in which a plaintiff's medical expert reached a different conclusion than the prison's own treating physicians—"[d]eterminations on admissibility should not supplant the adversarial process," because even "'shaky' expert testimony may be admissible," and defendants' proper course of action is to attack the expert opinion "through cross-examination." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993)). Indeed, the *Gayton* Court rejected district courts dealing with expert testimony through only "conclusory statements of admissibility or inadmissibility," *Gayton*, 593 F.3d at 616. Here, the District Court clearly viewed Dr. Pollak's opinion as generally reliable and admissible—relying on his opinion in analyzing deliberate indifference. *See* AR 7-8. While the District Court erred in its view of the dispute as to causation, it did not find that Dr. Pollak lacked reliability or admissibility. AR 10. While Appellees may raise those issues in an appropriate motion on remand, their view of Dr. Pollak's methods and reliability does not provide a basis to affirm, here.

### B. Appellees' attempts to distinguish this Court's substantial precedent supporting Mr. Meneweather are unpersuasive and depend upon wrongly disregarding Dr. Pollak's expert opinion.

Appellees' insistence upon disregarding Dr. Pollak's expert medical opinion helps explain their unpersuasive attempts to distinguish this Court's long line of authority holding that disputes over causation in correctional medical care cases should generally go to a jury. Appellees' discussion of cases falls into two categories. In the first category, they attempt to distinguish cases cited in Mr. Meneweather's Opening Brief using small or irrelevant factual distinctions, or distinctions that only even exist

if one accepts Appellees' own version of the facts. In the second category, they offer some additional cases that are either inapplicable to the circumstances here, or whose similarity to the instant case also depends on their refusal to construe facts—and Dr. Pollak's expert opinion—in favor of Mr. Meneweather. Both categories of cases illustrate why this Court should reverse.

First, Appellees' attempts to distinguish numerous cases cited in Mr. Meneweather's Opening Brief are unpersuasive. Appellees take great issue with *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011) having reinstated a jury verdict, rather than having reached this Court on an appeal of summary judgment. Response Br. at 11, 12. But as Appellees' own discussion makes clear, because the District Court had granted post-trial judgment to the defendants there, the standard is essentially the same as here. The reinstatement standard, "sufficient evidence to support the jury's conclusion that some actual compensable injury was caused by the defendant," Response Br. at 11 (citing *Roe*, 631 F.3d at 864), looks similar to, at summary judgment, this Court asking whether sufficient evidence exists from which a reasonable jury could conclude that "a delay in medical treatment exacerbated an injury" of the plaintiff. *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010). And because they dismiss Dr. Pollak's opinion, Appellees purport to distinguish *Roe* on the basis that "Mr. Meneweather was provided treatment consistent with the standard of care." Response Br. at 12. But as the District Court recognized, AR 7, Dr. Pollak opined that Appellees substantially departed from the standard of care—including Dr. Henze departing from the standard of care even for her own mistaken diagnosis. *E.g.* AR 447; AR 436-37; AR 416.

Appellees' attempts to distinguish other cases similarly fail. About *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018), Appellees ultimately argue that showing causation there "was less strenuous" there because of their view that "[t]he evidence here is not so clear cut." Response Br. at 12, 13. That view depends upon Appellees' accepting an autopsy report in *Miranda* as "verifying medical evidence," but dismissing Dr. Pollak's opinion as "no similar verifying medical evidence here." Response Br. at 13. Hardly the stuff of affirmance. Appellees later simply argue that *Jackson*, 74 F.4th at 496, "is factually distinct from this case." Response Br. at 14. But that too ultimately comes down to an irrelevant distinction, and Appellees insistence on dismissing Dr. Pollak's expert opinion. Appellees argue merely that "[t]he evidence necessary to suggest that a delay in receiving lifesaving treatment for cardiac arrhythmia is categorically different than evidence to establish sensorineural hearing loss and whether a delay in receiving steroids contributed to the hearing loss," Response Br. at 15, and that here "there is no medical evidence or testimony that any earlier treatment in this case could have changed the course of Mr. Meneweather's hearing loss." Response Br. at 16. But of course, that is exactly what Dr. Pollak did testify.

Second, Appellees' new citations provide little value here. One such case, *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027 (7th Cir. 2019), reflects Appellees' insistence on dismissing Dr. Pollak's expert medical opinion. In *Gabb*, the Court affirmed summary judgment because the plaintiff had no medical expert to opine about the proper treatment and had "not [told] us what that specific treatment was or how it would have alleviated his back pain." *Gabb*, 945 F.3d at 1033. That is quite

unlike here, where Dr. Pollak opined that the standard of care for Mr. Meneweather's condition called for high-dose steroids. Indeed, unlike here, "Gabb [had] no evidence that *any* course of treatment . . . would have provided him any relief." *Id.* at 1033-34 (emphasis in original). Appellees also cite *Pulera v. Sarzant*, which involved a plaintiff who advanced a theory that if he had received particular medication he would not have attempted suicide, even though "[h]is own expert denied such a theory." 966 F.3d 540, 552 (7th Cir. 2020). Pulera's expert would have provided little assistance for that theory in any event, because he "had no expertise on medication and lacked the authority even to prescribe drugs." *Id.* at 548. Here, where the District Court regarded Dr. Pollak as qualified and where Appellees made no motion to disqualify him, *see* pages 4-5, *supra*, *Pulera* provides little value. In *Norwood v. Ghosh*, an unreported case, the "major problem" for the plaintiff was "that the responsibility for his medical care has been diffused so widely that he has not been able to offer evidence sufficient" to show liability on the part of the particular individual medical defendants he sued. No. 15-2138, *2-3 (7th Cir. Jan. 26, 2018). Finally, Appellees point to *Hunter v. Mueske*, a failure-to-protect case that has nothing to do with provision of medical care at all. Even still, as to causation, the Court understandably rejected Hunter's causation theory that depended on defendants assigning him to cell with a person who assaulted him, because "the fight that caused Hunter's injuries occurred after Patterson had been reassigned to a new cell." 73 F.4th 561, 568 (7th Cir. 2023). "[I]n other words, after Hunter had received the very relief he had been seeking from Mueske." *Id.* Appellees cannot analogize that to their care, here.

**II.     Appellees' proposed alternative grounds for affirmance are foreclosed by precedent or otherwise unavailing.**

Perhaps recognizing that Dr. Pollak's expert report creates a dispute of fact as to causation that a jury must resolve, Appellees offer this Court alternative bases for affirmance. First, they urge this Court to reverse the District Court and grant summary judgment based upon deliberate indifference. But as Mr. Meneweather explained in his opening brief, the District Court correctly described numerous fact disputes that preclude that. Second, they urge the Court to penalize Mr. Meneweather for having failed to file a separate statement of facts pursuant to Local Rule 56.1 in the District Court. But even the authority that they cite explains that the decision whether to penalize a litigant for that failure falls within the discretion of the District Court, and here, the District Court exercised its discretion to reach the merits instead of enforcing strict compliance. District courts that overlook those failures, including when "it is clear from the memorandum exactly what [a party] is contesting," AR 2, do not abuse their discretion to commit reversible error.

First, Appellees renew an argument that the District Court already rejected—that no reasonable jury could find that they had acted with deliberate indifference. The District Court explained that the evidence as to deliberate indifference was "hotly contested," and that a reasonable jury could conclude both that Dr. Henze "disregarded an obvious explanation for Mr. Meneweather's sudden hearing loss" and that Dr. Ritz's "expressed concerns over cost overrode proper medical judgment," AR 7-8, both paradigmatic unconstitutional deliberate indifference to serious medical

needs. Mr. Meneweather similarly explained in his Opening Brief why the District Court got this right, *see* Opening Br. at 13-16, and need not belabor the point.

Mr. Meneweather would observe in reply, however, that the additional points that Appellees make to urge affirmance on this basis provide them no help. Regarding Dr. Henze, Appellees argue that the "district court failed to acknowledge Dr. Henze's right to rely on her medical judgment," Response Br. at 20, and that the "district court expressly failed to consider the difference of opinion on the appropriateness of treatment between Dr. Henze's and Dr. Ritz's expert, Dr. Tami, and Mr. Meneweather's expert Dr. Pollak." *Id.* But the District Court did exactly that, and simply recognized, correctly, that Appellees point to disputed facts that a jury must resolve. Appellees argue at one point that their view of the facts is "more likely," Response Br. at 22, a paradigmatic jury argument. As to Dr. Ritz specifically, Appellees explain that he "never examined Mr. Meneweather," Response Br. at 22, treating that as evidence that he could not face liability rather than evidence that he directed treatment decisions for Mr. Meneweather based "his expressed concerns over cost" rather than "proper medical judgment." AR 8. And Appellees argue that the correctional setting might help them, citing nonspecific "security concerns" that add "an additional layer to consider," Response Br. at 20, without specifying what those concerns were, how they affected either Appellee's treatment decisions, or why, even if such concerns existed, they would support judgment as a matter of law rather than providing color for Appellees' eventual arguments to a jury.

Second, Appellees urge affirmance on the alternative basis that Mr. Meneweather failed to file a responsive statement of facts pursuant to Northern District of Illinois

Local Rule 56.1. But in asking for affirmance on that basis, they mischaracterize case law and make an argument that this Court has previously said "reflects a profound misunderstanding of the relevant law and the purposes of the formal requirements in the district court's Local Rule 56.1." *Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011). Appellees cite *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215 (2015), for the purported proposition that facts a plaintiff does not properly respond to in a Rule 56.1 response must be deemed admitted, and that failing to treat them as such could support affirmance on its own. Response Br. at 19. But in *Curtis*, this Court issued a far different holding. There, a district court had exercised its discretion not to consider a plaintiff's opposition to summary judgment that had not strictly complied with Local Rule 56.1. *Curtis*, 807 F.3d at 219. This Court affirmed because it "review[s] a trial court's decisions regarding compliance with local rules only for an abuse of discretion." *Id*. (citing *Cracco v. Vitrian Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)). And a district court does not "abuse its discretion in finding [a party] failed to comply with Rule 56.1 requirements." *Id*. But district courts can make that choice in either direction; "the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." *Stevo*, 662 F.3d at 886 (citing *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)). District courts do not abuse their considerable discretion to manage litigation by declining to enforce strict compliance, and litigants like Appellees are not "entitled to expect strict enforcement by district judges." *Stevo*, 662 F.3d at 886. Where, as here, the District Court exercised its discretion to reach the merits, A1-2, Appellees' argument that Mr. Meneweather's noncompliance supports affirmance is foreclosed.

**III.  Appellees' failure to address the merits of Mr. Meneweather's delay argument is fatal, because his delay argument was not waived.**

In his Opening Brief, Mr. Meneweather explained that even if this Court thought that no reasonable jury could rely on Dr. Pollak's expert opinion to find that Appellees' substantial departures from the standard of care caused Mr. Meneweather's permanent hearing loss, Mr. Meneweather could still prevail on his claim because of an "unjustifiable delay that exacerbated [his] injury or unnecessarily prolonged" his physical suffering. Opening Br. at 30 (citing several cases); *id.* at 30-34 (setting out argument). Instead of making an argument on the merits, even in the alternative, Appellees' sole argument against this basis for reversal hinges on their belief that the argument is waived. Their waiver argument has three problems, however. First, the argument was not waived. Mr. Meneweather advanced that argument at summary judgment, complaining of "an inexplicable delay in treatment which serves no penological interest." Dist. Ct. Doc. 123 at 3-4, and so he sufficiently preserved the argument for appeal in his briefing. Second, even if he could have done more to develop that argument in the District Court, Mr. Meneweather need not have cited the exact same authority he cited on appeal, and his proceeding on a "deliberate indifference theory at summary judgment," *King v. Kramer*, 763 F.3d 635, 641 (7th Cir. 2014), more than sufficed given the same legal theory and facts. And third, because Appellees made a conclusory, one-paragraph waiver argument, the waiver argument itself is waived under this Court's precedents—as is any argument on the merits as to that basis for reversal at this Court.

First, Appellees' waiver argument fails primarily because Mr. Meneweather did preserve his delay argument in the District Court. In opposing summary judgment, Mr. Meneweather pointed out that some evidence that "can support an inference of deliberate indifference is an inexplicable delay in treatment which serves no penological interest." Dist. Ct. Doc. 123 at 3-4 (citing *Cole v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996)). Mr. Meneweather went on to discuss other authority involving delayed—rather than fully denied—care, including one case where a prison physician had delayed treatment "for six weeks," then "delayed [the plaintiff's appointment with a specialist," and this Court subsequently put the case to a jury because of the "unjustifiable risk of pain and prolonged recovery." Dist. Ct. Doc. 123 at 4-5 (citing and discussing *Petties v. Carter*, 836 F.3d 722, 733 (7th Cir. 2016) (en banc)). Finally, Mr. Meneweather cited this Court's discussion in *Conley v. Birch* about how a prison doctor's having "substantially and unreasonably delayed necessary treatment" that resulted in "throbbing pain, severe swelling, … and loss of function" could state an Eighth Amendment deliberate indifference claim. Dist. Ct. Doc. 123 at 5 (citing, quoting, and discussing *Conley v. Birch*, 796 F.3d 742, 744, 747 (7th Cir. 2015)). This discussion over several pages of his opposition to summary judgment at the District Court more than suffices to preserve his delay argument for appeal.

Second, even if they believe that Mr. Meneweather could have better presented the delay argument in the District Court, Appellees' waiver argument misses the mark. For one thing, a litigant need not cite the same cases on appeal to support an argument. "[A] litigant does not forfeit a position just by neglecting to cite its best

authority; it suffices to make the substantive argument." *Dixon v. ATI Ladish LLC*, 667 F.3d 891, 895 (7th Cir. 2012) (citing *Elder v. Holloway*, 510 U.S. 510 (1994)).[1] While Mr. Meneweather has cited additional cases on appeal, the appellate system does not lock parties into only the authority cited at prior stages—an appellate court should "use its full knowledge of its own and other relevant precedents," especially on *de novo* review of a question of law. *Elder*, 510 U.S. at 511. More importantly, Mr. Meneweather's arguments about delay address ultimately the same Eighth Amendment deliberate indifference claim based upon the same facts. And "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties," because it "retains the independent power to identify and apply the proper construction of governing law." *Hess v. Garcia*, 72 F.4th 753, 762 n.7 (7th Cir. 2023); *see also Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law"). In *Hess*, a litigant had "put squarely before this court the merits of her claim that [a law enforcement defendant's] conduct violated her constitutional right to be free from sexual assault by a government official," and therefore had not "waived her right to the application of the Fourth Amendment" despite the district court there finding that she had withdrawn the argument. *Id*. Here, particularly where Mr. Meneweather's theories are inextricably bound together and based upon the same

---

[1]

factual predicate of Appellees' inexplicable delay in providing him constitutionally adequate medical care, their waiver argument fails.

Third, Appellees' risky decision to rely solely upon a misguided waiver argument to rebut Mr. Meneweather's argument that a jury must hear his claim as to delay requires reversal. Initially, Appellees have probably waived their own waiver argument by failing to develop it sufficiently even on appeal. "[A] party can waive a waiver argument" just as much as any other sort of argument. *United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (citing *Qui Ping Li v. Holder*, 612 F.3d 603, 604 (7th Cir. 2010)). And any appellate arguments consisting of "conclusory allegations that" facts—like the content of an opposing party's trial court briefs— "establish estoppel and waiver" do not suffice, because this Court has "repeatedly held that arguments not properly developed on appeal may be waived." *Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 649 (7th Cir. 2014) (citing *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012)); *see also, e.g.*, *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) ("We have repeatedly held that undeveloped arguments are considered waived."); *Central States v. Midwest Motor Express*, 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way are waived."). Improper development on appeal includes "perfunctory and undeveloped arguments that are un-supported by pertinent authority," *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004), arguments made "with no evidence or explanation," *Dorris v. Unum Life Ins. Co. of Am.*, 949 F.3d 297, 306 (7th Cir. 2020), or arguments made in a "single sentence," *McCottrell v. White*, 933 F.3d 651, 670 n.12 (7th Cir. 2019). Here, Appellees offer just a paragraph with a conclusory assertion of

waiver. Response Br. at 18. They cite one case for the general proposition that arguments can be waived, *id.*, but neither analogize that case to the circumstances of this one nor discuss Mr. Meneweather's district court briefing in any detail at all. Which makes some sense, given how difficult Appellees might find it to make a real waiver argument given Mr. Meneweather's actual arguments in the District Court as to delay. *See* page 13, *supra*; *see also* Dist. Ct. Doc. 123 at 3-5. Absent a more developed discussion of why Mr. Meneweather's discussion of delay and citations to cases like *Cole*, *Petties*, and *Conley* should not suffice, Appellees' waiver argument is either itself waived, or at minimum fails on its own terms.

More fatally for Appellees in this appeal, however, they have definitely waived any response as to the merits of Mr. Meneweather's argument that his Eighth Amendment claim should go before a jury because of their delay in treating him. In response to that entire section of Mr. Meneweather's brief setting out the unconstitutional delay and associated physical pain and injury as a basis for Mr. Meneweather to prevail on his Eighth Amendment claim, *see* Opening Br. at 30-34, Appellees offer only their waiver argument (undeveloped as it was). *See* Response Br. at 18. If the Court were to agree with them on one of their bases for alternative affirmance, that might make Mr. Meneweather's arguments about delay irrelevant. If no reasonable jury could find deliberate indifference, for example, that would apply to any theory of Mr. Meneweather's Eighth Amendment claim, because any manner of winning it requires proving deliberate indifference on the part of the Appellees. But Appellees make no substantive response to Mr. Meneweather's delay argument that specifically addressed evidence that could show his interim physical injury and

pain caused by the delay, in the event this Court believed that he could not show causation as to the permanent loss itself. So, because this Court should not affirm on the alternative basis of deliberate indifference, *see* Opening Br. at 15-18; *see* pages 9-10, *supra*, it must reinstate Mr. Meneweather's claims at least as to the delay, because Appellees have waived any response there.

## CONCLUSION

For the reasons in this brief, as well as the Reasons in the Opening Brief, this Court should reverse the judgment of the District Court and remand for a jury to decide the key causation issues that remain in this case.

Respectfully submitted,

/s/ Jim Davy

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Counsel for Appellant

October 15, 2024

**CERTIFICATE OF COMPLIANCE**

In accordance with Federal Rule of Appellate Procedure 32(g), I certify that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(7)(B) and Circuit Rule 32(c) because it contains 4,683 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word version 16.89.1, set in Century Schoolbook font in 12-point type.

/s/ Jim Davy

Jim Davy

## CERTIFICATE OF SERVICE

I certify that on October 15, 2024, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Jim Davy

Jim Davy